### Isaac W. King

#### v.

### A. and A. F. Spaeth.

Where the contract for the purchase of land known as the "King estate,'·
not otherwise described therein, was' made with reference to a map showing.
the land on one side fronting on a certain street, which would give it peculiar
value, when in fact there was a strip of land, owned by another party, between.
the street and the land sold, specific performance of the contract will not be;
decreed.

---

On bill, answer and proofs in open court.

*Mr. Alexander Grant*, for the complainant.

*Mr. Charles T. Glen*, for the defendants.

GREEN, V. C.

This is a suit for the specific performance of a contract alleged to have been made between the parties on the 30th of April, 1891, by which the complainant sold to the defendants a tract of land in the township of East Orange in this state, for the sum of $10,000.

The bill alleges that the contract for sale was made at that time; that $50 were paid as part of the consideration money, and a receipt therefor given by the complainant to the defendants; the body of it was drawn by one of the defendants, and it was signed by the complainant; that he tendered a deed for the property, and demanded that the defendants carry out their contract, which they have refused to do. The defence interposed is, that there is no sufficient memorandum in writing of the said contract; that, at the time of the oral agreement between the parties, the complainant represented that the land was larger in area, and bounded differently from the property as described in the deed tendered, and invokes not only the legal defence that the contract is not enforceable against them, but also that they are not in equity bound to take the property which the complainant offers to convey.

It appears by the evidence that negotiations were entered into between the parties for the sale and purchase of certain property in East Orange, which was designated generally as the " King estate." These negotiations culminated on the 30th of April, 1891, in an oral agreement by the defendants to buy the land for $10,000.

It is testified by both of the defendants that at this time the property was not only orally described and bounded by the complainant to them, but that a map purporting to show the lines of the tract, and its relation to certain streets, was also displayed. This map was presented on the trial and is marked *Exhibit D 1.* The defendants both claim that they received it from the complainant personally.

On his part, he denies having given it to the defendants, but admits that they must have received it from his agent, with

whom it was left for the purpose of effecting a sale of the property in question.

It matters but little whether the defendants received the map from the complainant or from his agent, if they did receive it from either pending the negotiations for the purchase of the property, and it was used therein by him as indicating the description and location of the property.

I think the clear weight of evidence is that this map was present at the time the negotiations were completed and was used in describing the location of the land.

The defendants both state that the complainant at that time represented that the property which he offered for sale, and which they agreed to buy, was bounded on the north by a street called New street, on the west by a contemplated street which was represented to be a continuation of Thompson street, on the south by the Delaware, Lackawanna and Western railroad, and on the east by lands of some other owner. An inspection of the map in question shows a tract, the boundaries marked by green penciling, which is stated to have been made by the surveyor, partially bounded on the north by a street designated as New street, on the west by a tract of land evidently laid out as a street but without a name, on the south by the railroad and on the east by other property. There is another street running through a portion of the tract, which is designated in ink as North street and in pencil as King street. The rest of the property in question is laid out in lots. Both parties agree that there was to be excepted out of the property so delineated on the map, two lots on the southeast corner. By the map these lots appear to be together one hundred feet deep, fifty-nine feet wide on the south end and a less width on the other.

The defendants both testify, more than once, that the representation was made by the complainant that Thompson street was the westerly boundary of the property to be purchased by them, and that it gave the property a frontage on Thompson street of four hundred and odd feet, and both say that the fact that it had such frontage was the decisive point with them in inducing them to make the purchase.

King *v.* Spaeth.

At this time, when the oral agreement was made, $50 were paid by the defendants to the complainant, and the following receipt was passed, which was written by one of the defendants and signed by the complainant. It is as follows:

" Received, Newark April 30th, 1891, from A. & A. F. Spaeth fifty dollars— this on act. of purchase money of the estate of I. W. King. The property purchased and understood to be sold for the sum of ten thousand dollars is located in East Orange and known as the King Estate fourty six lots—two lots on southeast corner having been sold as not included in this sale. A deed of warranty is to be given by him on or before June first 1891, at the office number 22 Academy Street. A mortgage of fifteen hundred dollars now held by The Franklin Savings Institution will be deducted from the above named amount. Also interest accrued upon the same to the date of conveyance.

"$50                                         ISAAC W. KING."

The defendants afterwards ascertained that Thompson street, as laid out, if extended southerly to the railroad, did not touch this property, but that it was seventy-six feet distant at the northerly side on New street, and fifty-seven feet on the southerly or railroad side, and that the intervening property belonged to a Mr. Shepherd. Also, that the two lots on the southeasterly corner, which had been theretofore conveyed to a Mr. Burnett, instead of being one hundred feet deep and fifty-nine feet on one end, were one hundred and twenty-five feet deep by sixty feet wide at the southerly end and forty-five feet at the northerly end, and, in consequence of this discrepancy, they refused to take the deed, and sought to induce the complainant to return them the $50 which had been paid.

Without considering the technical questions which are raised as to whether there is a sufficient memorandum, in the law, of this contract, to be binding, so as to give the complainant the right of action to enforce the same, the case may be disposed of upon its merits.

Although the complainant denies having made the representation that this property was bounded on the west by Thompson street, the clear weight of evidence is against him. Not only this, but it must be accepted as indisputable that at the time the contract was made the map (*Exhibit D 1*) was before the parties and

referred to in the negotiations, and by this map it clearly appears that a street bounds the property on the west.

That this is a material point is testified to by both of the defendants—one says that it was the decisive matter which induced the purchase, and that the property without such frontage upon a street which was understood to be contemplated by the authorities of East Orange, would have lessened the value—in the view of one of them, to the amount of $8 or $10 a foot, or between $2,000 or $3,000 in the aggregate.

The deed tendered by the complainant and refused by the defendants, and which the complainant, by this suit, seeks, by the decree of this court, to require the defendants to accept, does not convey the property which they have purchased, not only with reference to the westerly boundary, but also with reference to the two lots in the southeasterly corner of the property in question. It appears that the lots conveyed which could not be embraced in the deed to the defendants are twenty-five feet more in depth than the lots as shown by the map, with reference to which they allege they made their contract.

There is no description by metes and bounds of the property set out in the receipt which is claimed by the complainant to be a sufficient memorandum. It is indefinitely designated generally as the King estate. This, as shown by the evidence, was represented as located and as containing property not conveyed by the deed tendered. The facts present a case of misrepresentation as to a material part of the subject-matter of the contract, made by the complainant during the negotiation, and relied on by the defendants. Under such circumstances there can be no decree for specific performance. *Fry Spec. Perf.* §§ *425, 458; Pom. Cont.* §§ *209, 225.* It is difficult to believe that such representation could have been innocently made, and the case, therefore, is not one for a decree with a deduction or compensation.